Kevin W. Willhelm
State Bar No. 00785252

Willhelm Law Firm
PO Box 3536
Abilene, TX 79604
Telephone:  (325)692-0900
Facsimile:  (325)644-8985
E-mail:  justice@willhelmlaw.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| IN RE: | § CASE NO.    24-10200-9 |
| | § |
| | § |
| NORTH RUNNELS HOSPITAL | § CHAPTER 9 |
| DISTRICT | § |
| | § |
| DEBTOR | § |

**FIRST AMENDED NORTH RUNNELS HOSPITAL DISTRICT'S
DISCLOSURE STATEMENT**

**(DATED APRIL 7, 2026)**

THIS DISCLOSURE STATEMENT HAS NOT YET BEEN CONDITIONALLY APPROVED.

ONCE IT IS CONDITIONALLY APPROVED BY THE COURT, THE HEARING DATES FOR FINAL APPROVAL OF THE DISCLOSURE STATEMENT, THE CONFIRMATION HEARING DATE ON THE PLAN, AND THE DEADLINES FOR VOTING AND OBJECTING TO THE DISCLOSURE STATEMENT AND/OR PLAN WILL BE INCLUDED AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

I.      **INTRODUCTION**

This is the disclosure statement (the "Disclosure Statement") in the chapter 9 case of North Runnels Hospital District (the "Debtor" or the "Hospital").   This Disclosure Statement contains information about the Debtor and describes the Plan of Adjustment (the "Plan") filed by [the Debtor] on December 15, 2025.  A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.  ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed at Section III of this Disclosure Statement.   Generally  unsecured  creditors  are  classified  in  Class  4,  and  will  receive  a

distribution of 100% of their allowed claims, to be distributed as follows:

A.   **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims of the type you hold (i.e., what you will receive on your claim if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why North Runnels Hospital District believes the Plan is feasible, and how the treatment of your claim under the Plan compares to what you would receive on your claim in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.   This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B.   **Deadlines for Objecting; Date of Plan Confirmation Hearing**
**(There are NO impaired Creditors; There will be no Vote)**

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.   *Time and Place of the Hearing to Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Plan will take place on _____, at _____ by Webex.

2.   *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon Kevin W. Willhelm, Willhelm Law Firm, P.O. Box 3536, Abilene, Texas  79604 by MARCH 14, 2026.

4.   *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Kevin W. Willhelm, Willhelm Law Firm, P.O. Box 3536, Abilene, Texas  79604, Phone Number  325.692.0900.

C.   **Disclaimer**

*The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed*

*judgment about its terms.  The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.  The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan.  Objections to the adequacy of this Disclosure Statement may be filed until March 14, 2026.*

II.     **BACKGROUND**

A.      **Description and History of the Debtor's Business**

The Debtor is a rural public hospital district operating as North Runnels Hospital District located in Winters, Texas.  The Debtor provides acute inpatient medical services, a swing-bed program, a 24-hour trauma center, outpatient services, wound care services, laboratory services, radiology services, rehabilitation services, EMS services, home health services, and rural health clinic services. The Hospital is licensed for 24 beds and the Debtor employs approximately 100 people full-time, part-time, PRN and contract (making it the second largest employer in North Runnels County).  The Debtor serves as the hub for essential medical services serving Runnels County and the surrounding rural areas.

The Debtor is a duly organized hospital district and a body corporate and political subdivision of the State of Texas as described in under Chapter 282 of the Texas Health & Safety Code.

B.      **Events Leading to Chapter 9 Filing**

1.      The Debtor purchased a local nursing home in December of 2019. For the past three and half years, the nursing home has incurred substantial losses contributing greatly to the Debtors inability to meet its financial obligations. The board voted to close the nursing home in July of this year (2024) and the last resident moved out in September of this year (2024).

2.      The Debtor migrated to a different electronic medical record and billing system in December of 2021 resulting in billing disruptions and general revenue cycle difficulties which caused cash flow issues. Billing disruptions have been resolved and the current

administration is working with Debtor personnel and billing vendors to resolve revenue cycle difficulties with promising results at the date of this petition.

3.      The onset of the pandemic resulted in inflation which had a negative financial impact on an already financially vulnerable Debtor operation. Costs increased in all areas of the Debtors operations, including salaries and wages. The current administration is working to lower costs beginning with a comprehensive review of the salary structure and staffing patterns. Other costs will be addressed as issues are discovered through the evaluation process.

4.      Medicare cost settlements resulted in payables owed to Medicare of $1,268,501 in 2021 and $1,130,359 in 2022.

5.      The losses from the nursing home, the EMR migration, inflation and negative cost report settlements all had a cascading effect on the operation and its ability to meet its financial obligations and, as a result, many vendors were unpaid. Some of those vendors were responsible for part of the billing process and, thus, billing processes were further interrupted in addition to the disruption caused by the EMR migration.

6.      The absence of financial leadership also affected the Debtor greatly as there has been a lack of accurate financial reporting, a lack of financial analysis and evaluation of the operation and general sound financial leadership.

7.      Although the Hospital has always been committed to providing the highest level of patient care for the citizens of Runnels County and the surrounding areas, it has struggled financially for a number of years as outlined above. However, with the change in executive leadership comes a change in direction. The current CEO, hired in July of 2024 on an interim basis and then in October of 2024 made permanent, is a CPA with over 30 years of experience in healthcare operations and finance.

8.      While these past business circumstances, and the large liabilities and alleged claims resulting from them, have eroded the Debtor's financial condition and its ability to pay its obligations, its current medical-care operations conducted in North Runnels County, Texas are solid and, with restructuring and adjustment of its prepetition debt, the Debtor's outlook and prospects are reasonably strong.  Certainly, the worthy mission of the Debtor, to which its management and Board are committed, subsists and deserves the relief afforded by chapter 9. The selling of the nursing home, the

restoration of billing processes, the close management of the revenue cycle, the cost structure analysis and adjustments, and the implementation of a comprehensive marketing plan to recapture lost volume in a competitive market indicate a positive future for the debtor.

C.     **Significant Events During the Bankruptcy Case**

During this case, Debtor has continued operation of the rural hospital but has changed the dynamic of the operations and has closed the nursing home and implemented more stable and structural billing practices.

Debtor has retained Kevin W. Willhelm as its attorney to represent it in these Chapter 9 proceedings.

D.     **Projected Recovery of Avoidable Transfers**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions. To Debtor's knowledge there are no Chapter 5 actions available to the Debtor.

E.     **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article V of the Plan.

G.     **Current and Historical Financial Conditions**

The Debtor's most recent financial statement issued before bankruptcy, which was filed with the Court, is set forth in Exhibit A.

The most recent post-petition financial statement is set forth in Exhibit B

III.     **SUMMARY OF THE PLAN OF ADJUSTMENT AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

A.     **What is the Purpose of the Plan of Adjustment?**

As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.      **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has *not* placed the following claims in any class:

1.      *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 9 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.   The Code requires all administrative expenses to be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| **Type** | **Estimated Amount Owed** | **Proposed Treatment** |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business after the Petition Date | $0.00 | Nuance Communications $780.21 paid US Foods $2,683.92 paid |
| The Value of Goods Received in the Ordinary Course of Business within 20 days before the Petition Date | $11,083.30 | **Airgas USA LLC** $3,828.78 paid **Texas Workforce Commission** $10,448.00 Paid **McKesson Medical Surgical Inc.** $11,083.30 shall be at **$184.72 per month for 60 months** |
| Professional Fees, as approved by the Court | $0.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the court on the effective date of the Plan. |
| Clerk's Office Fees | $0.00 | Paid |
| Other administrative expenses | $0.00 | None |
| Total Owed on the date Adjustment | **$11,083.30** | |

| Plan Filed | | |
|---|---|---|

2. ***Priority Tax Claims***

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.   Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| None | | | |

C.      **Classes of Claims**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.      ***Classes of Secured Claims***

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.   If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

**Class 1**

| POC # | Description | Impairment | Treatment |
|---|---|---|---|
| 18 | Abernathy State Bank | None | This claim was secured by the tax revenue generated by Runnels County. Abernathy State Bank filed a Motion to Dismiss the Bankruptcy on May 27, 2025. On July 10, 2025, the Court denied Abernathy State Bank's Motion to Dismiss pursuant to an agreement paying one-half the outstanding principal, being $671,324.71, plus accrued |

| | | | |
|---|---|---|---|
| | | | interest equal to $94,377.08 through June 27, 2025, and a per diem accrual from such date of $391.61, plus attorneys' fees accrued through May 31, 2025, of $52,195.21. The balance of the note was satisfied pursuant to the agreement upon expiration of the term of the note on October 28, 2025. |
| 20 | US Dept of HHS-CMS | None | $442,534.20, which will be paid without interest over the five-year Plan Period in 60 consecutive monthly installments of $7,375.57 |

### 2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept a different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 2 | None | | |

### 3.    *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Classes, which contain general unsecured claims against the Debtor:

**Class 3 General Unsecured Class; Unimpaired**

| POC # | Creditor | POC Amount | Adjustment | Adjusted Amount to be paid | Payment Amount 60 months | |
|---|---|---|---|---|---|---|
| | | | | | | |
| 1 | Staples | 559.79 | -12.16 | 547.63 | 9.12 | * |
| 2 | Airgas | 105.84 | -105.84 | 0.00 | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3 | HHS | 315.46 | 0.00 | 315.46 | **5.25** | |
| 4 | HHS | 1,309.48 | 0.00 | 1,309.48 | **21.82** | |
| 5 | Mayfield Paper | 5,243.28 | -101.01 | 5,142.27 | **85.70** | * |
| 6 | Airgas | 17,418.85 | -9,272.60 | 8,146.25 | **135.77** | * |
| 7 | GE | 33,739.82 | -5,502.24 | 28,237.58 | 470.62 | * |
| 8 | Labcorp | 21,859.34 | -13,057.61 | 8,801.73 | 146.69 | * |
| 13 | McKesson | 51,641.42 | 0.00 | 51,641.42 | 860.69 | |
| 10 | City of Winters | 38,622.89 | -3,063.35 | 35,559.54 | 592.65 | * |
| 17 | GNX | 649.95 | 0.00 | 649.95 | 10.83 | |
| 15 | Nuance Comm | 2,845.56 | -1,300.35 503(b)9 claim pd | 1,545.21 | 25.75 | * |
| 16 | Cardinal | 6,583.32 | -177.53 | 6,405.79 | 106.76 | * |
| 17 | US Foods | 18,977.24 | -6,035.10 503(b)9 claim pd | 12,942.14 | 215.70 | * |
| 19 | Rural Hospital Management Associates, LLC | 159,932.22 | | | 2,665.53 | |
| 20 | USD of HHS-CMS | 592,366.03 | | | 9.872.76 | |
| | **Total Per Month** | | | | **15,22564** | |

* See individual creditor/vendor invoice listing for adjustment and reason

**Claims not filed**:

| | Creditor | Amount | Payment Amount 60 months | |
|---|---|---|---|---|
| | | | | |
| 1 | Ballinger Hospital | $262,500.00 | **$4,375.00** | * |
| 2 | Trubridge | $633,715.92 | **$10,561.93** | * |
| | **Total** | 896,215.92 | **$14,936.93** | |

    D.    **Means of Implementing the Plan**

        1.    *Source of Payments*

Payments and distributions under the Plan will be funded by the following by the revenue generated through operation of the business of the Debtor.

    E.    **Risk Factors**
The proposed Plan has the following risks:

Loss due to theft, fire or a cataclysmic event; economic depression; increase in competitors; or customer abandonment.

    F.    **Executory Contracts and Unexpired Leases**

The Plan lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the

obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

***The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is _____.*** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G.    **Tax Consequences of Plan**

***Creditors Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The Debtor does not anticipate any adverse tax consequences based upon its performance under the plan

IV.    **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §943(b) of the Code. These include the requirements that:  the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor at least as much as the creditor holder would receive in a chapter 7 liquidation case, unless the creditor votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A.    **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor has a right to vote for or against the Plan only if that creditor or has a claim that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that no classes are impaired and that holders of claims in each of these classes are therefore not entitled to vote to accept or reject the Plan.

The Plan Proponent believes that there are no unimpaired classes. Holders of claims in unimpaired do not have the right to vote to accept or reject the Plan.

1.      *What Is an Allowed Claim*

Only a creditor with an allowed claim has the right to vote on the Plan.  Generally, a claim is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent or unliquidated, or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim.  When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was 12/12/2024.***

***The deadline for filing an objection to a claim is 60 day after the Effective date.***

2.      *What Is an Impaired Claim?*

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.      *Who is **Not** Entitled to Vote*

The holders of the following five types of claims are *not* entitled to vote:

- holders of claims that have been disallowed by an order of the Court;

- holders of other claims that are not "allowed claims" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims in classes that do not receive or retain any value under the Plan of Adjustment;

- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan of Adjustment, You Have a Right to Object to the Confirmation of the Plan.***

4.      *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan of Adjustment in each capacity, and should cast one ballot for each claim.

B.      **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan of Adjustment, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2].

1.      *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.      *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code.  A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C.      **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.      *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

> 2. *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information.  Those projections are listed in Exhibit C.

The numerical projections are based on an increase in business gross income and the reduction of business expenses.  These assumptions are based on an upturn in generated income in recent months and a conservative projection of future income and expenses.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V.     EFFECT OF CONFIRMATION OF PLAN

### A.     DISCHARGE OF DEBTOR

Discharge.  On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code.  However, the Debtor shall not be discharged from any debt imposed by the Plan.  After the effective date of the Plan your claims against the Debtor will be limited to the debts imposed by the Plan.

### B.     Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### C.     Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

## VI.     SOLICITATION FOR APPROVAL

**IGNORE  THIS  PARAGRAPH  UNTIL  THIS  DOCUMENT  IS  CONDITIONALLY**

**APPROVED AS A DISCLOSURE STATEMENT.  NO PARTY IS AUTHORIZED OR ALLOWED TO SOLICIT SUPPORT FOR THIS PLAN ON BEHALF OF DEBTOR UNTIL THIS DISCLOSURE STATEMENT IS APPROVED.**

**Please Vote for this Plan.**

Debtor asks that the Creditors vote in favor of this Plan because it will allow Debtor to pay it's secured and priority creditors and still stay in business.  Debtor thinks that his is more than the creditors will receive if the Plan is not confirmed.

REMEMBER THE DEADLINE FOR BALLOTS IS _____, 2025

Mail your ballot to:     Willhelm Law Firm
                         PO Box 3536
                         Abilene, TX 79604

Creditors should talk to an attorney about their rights and the responsibility in this case. Creditors should have their attorneys call the attorney for the Debtor.  Debtor's attorney is: Kevin W. Willhelm; telephone: 325-692-0900, facsimile:  325-692-8994

If a creditor does not have an attorney, but still wants more information, that creditor can call Debtor's attorney directly.   HOWEVER, REMEMBER THAT DEBTOR'S ATTORNEY CANNOT GIVE CREDITORS LEGAL OR FINANCIAL ADVICE BECAUSE DEBTOR'S ATTORNEY REPRESENTS DEBTOR NOT CREDITORS.

Respectfully submitted,


/s/ Kevin W. Willhelm
Kevin W. Willhelm
State Bar No. 00785252

Willhelm Law Firm
PO Box 3536
Abilene, TX 79604
Telephone:  (325)692-0900
Facsimile:  (325)644-8985
E-mail:  justice@willhelmlaw.com


**NOTICE OF RIGHT TO OBJECT AND HEARING
ON DEBTOR'S DISCLOSURE STATEMENT**


**OBJECTIONS TO THE DEBTOR'S DISCLOSURE STATEMENT MAY BE FILED BY ANY PARTY-IN-INTEREST. THE DEADLINE FOR FILING OBJECTIONS TO THE DEBTOR'S**

**DISCLOSURE STATEMENT IS MARCH 14, 2026. ANY OBJECTIONS OR OTHER RESPONSE TO DEBTOR'S DISCLOSURE STATEMENT MUST BE FILED WITH THE U. S. BANKRUPTCY CLERK FOR THE NORTHERN DISTRICT OF TEXAS, ABILENE DIVISION, TEXAS, AND ALSO SERVED UPON THE UNDERSIGNED ATTORNEY-OF-RECORD FOR DEBTOR.**

**NO HEARING WILL BE CONDUCTED ON DEBTOR'S DISCLOSURE STATEMENT IN THE ABSENCE OF A TIMELY FILED OBJECTION. IF NO OBJECTIONS ARE FILED IN A TIMELY MANNER, THE COURT MAY APPROVE DEBTOR'S DISCLOSURE STATEMENT WITHOUT FURTHER NOTICE OR HEARING. IF AN OBJECTION IS TIMELY FILED, THE MATTER WILL BE HEARD BY THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, ABILENE DIVISION, ON _____ IN PERSON AT the US Bankruptcy Court, 1100 Commerce Street, 14th Floor, Courtroom No. 3, Dallas, TX, 75242OR OR BY WEBEX:**

 **For WebEx Video Participation/Attendance:**

**Link: https://us-courts.webex.com/meet/everett**

 **For WebEx Telephonic only Participation/Attendance:**

Dial-In: 1-650-479-3207;

Access code: 2304 017 9738

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that a true and correct copy of the above and foregoing document was served on April 7, 2026, electronically on all appropriate parties in accordance with Bankruptcy Rules through the Court's CM/ECF filing system and/or by U.S. first class mail, postage prepaid.

/s/ Kevin W. Willhelm
Kevin W. Willhelm, Attorney for Debtor

Attentive Nurse Staffing
c/o Matthew Choate
Choate Law Firm, PLLC
PO Box 206
Abilene, TX 79604

Adair Myers Stevenson Yagi, PLLC
24 Greenway Plaza Ste. 1305
Houston, TX 77046

NHIC/Hospital Audits
PO Box 200345
Austin, TX 78720

OAG Texas
Sahrish K. Soleja
Bankruptcy Regulatory Section
PO Box 12548
Austin, TX 78711

Secretary of State of Texas
PO Box 13697
Austin, TX 78711

Texas Comptroller of Public Accounts
111 E. 17th Street
Austin, TX 78774

Texas Dept. of Health
1100 W. 49th Street
Austin, TX 78756

Texas Dept. of Insurance
PO Box 149104
Austin, TX 78714

Texas Health & Human Service
Office of Ombudsman
PO Box 13247
Austin, TX 78711

Texas Hospital Assoc.
PO Box 2756
San Antonio, TX 78299

TruBridge
c/o Kevin Plessner
54 St. Emanuel Street
Mobile, AL 36602

Rural Hospital Management
c/o Katherine T. Hopkins
Kelly Hart & Hallman LLP
201 Main St. Ste. 2500
Fort Worth, TX  76102

Ballinger Memorial Hospital
PO Box 617
Ballinger, TX 76821

Christopher S. Murphy
Texas Attorney General's Office
Bankruptcy & Collections Division
P.O. Box 12548
Austin, TX 78711-2548

KNG Staffing Agency, LP
PO Box 2388
San Angelo, TX 76902

Dawn Whalen Theis; AUSA
1100 Commerce St. 3rd FL
Dallas, TX  75242

Laboratory Corporation of America
PO Box 12140
Burlington, NC 27216

City of Winters
310 S. Main St.
Winters, TX 79567

Staples
PO Box 102419
Columbia, SC 29224

Airgas USA LLC
110 West 7th St., Ste. 1400
Tulsa, OK  74119

GE Precision Healthcare LLC
c/o Michael B. Bach
25 Whitney Dr., Ste. 106
Milford, OH 45150

McKesson Corp,
6555 N. State Hwy 161
Irving, TX 75039

Texas Workforce Commission
PO Box 12548, MC 0008
Austin, TX 78711-2548

GNXCOR USA, Inc.
Attn: Bankruptcy Dept.
PO Box 935819
Atlanta, GA 31193

Nuance Communications
Fox Rothschild LLP
Attn: Maria A. Milano
1001 4th Ave., Ste. 4400
Seattle, WA 98154

Cardinal Health
7000 Cardinal Place, Ste. 150
Dublin, OH 43017

US Foods
Brian Shaw
123 N. Wacker Dr., Ste. 1800
Chicago, IL 60606

US Dept of HHS-CMS
Rasheed Davis
801 Market Street Level 9
Philadelphia, PA 19107

USDHHS HRSA
Sandy Seaton
5600 Fishers Lane, 11N18
Rockville, MD 20857